JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Donald Turner, was indicted on one count of robbery in violation of R.C. 2911.02, a felony of the second degree and with a notice of prior conviction. He was convicted by a jury and sentenced by the trial court to five years in prison. Appellant now appeals both his conviction and sentence, raising six assignments of error for our review. Finding merit to one of the assignments of error, we affirm the conviction, vacate appellant's sentence and remand the matter to the trial court for a new sentencing hearing.
 {¶ 2} The facts are largely undisputed. The state's evidence demonstrated that on June 3, 2004, appellant stole the purse of a woman eating lunch in the food court at Tower City Mall. The victim was told by another patron that appellant had taken her purse. She saw appellant rushing through the food court with her purse and alerted a mall employee who followed appellant while notifying mall security on his radio. A Cleveland police officer, working security at Tower City, got the call and observed appellant as he hurried through the mall. He saw appellant throw the purse in a garbage can before getting on the escalator leading to the exit level. He and two other police officers were at the top of the escalator when appellant tried to charge through them, striking the officers. Appellant was arrested and it was discovered that he had been released from prison only a few weeks before.
 Assignments of Error I and II *Page 4 {¶ 3} In his first two assignments of error, appellant asserts that both his statutory and constitutional speedy trial rights were violated when he was not brought to trial until 28 months after his arrest and he was incarcerated the entire pretrial period.
 {¶ 4} Appellant has established a prima facie case for dismissal on speedy trial grounds since the time lapse clearly violates the 270-day statutory limit. He was arrested on June 3, 2004 and was not brought to trial until October 17, 2006 — 28 months later. The burden is on the state to demonstrate acceptable extensions in accordance with statute in order for the speedy trial time to be properly tolled.
 {¶ 5} The time limit in which to bring a felony charge to trial is 270 days after the accused's arrest. R.C.2945.71(C)(2). This time limit can only be extended by specifically defined statutory exceptions. R.C.2945.72 spells out these exceptions as follows:
 {¶ 6} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:
 {¶ 7} "(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability; *Page 5 
 {¶ 8} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
 {¶ 9} "(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 {¶ 10} "(D) Any period of delay occasioned by the neglect or improper act of the accused;
 {¶ 11} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 12} "(F) Any period of delay necessitated by a removal or change of venue pursuant to law;
 {¶ 13} "(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
 {¶ 14} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
 {¶ 15} "(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending." *Page 6 
 {¶ 16} The record shows clearly that appellant himself facilitated many of the delays over the 28-month time period prior to trial. Appellant requested several trial continuances and filed numerous pretrial motions. In addition, four psychiatric evaluations were conducted to determine if appellant was competent to stand trial. The psychiatric evaluations and appellant's numerous pretrial motions and requests for continuances tolled the statutory time period prescribed for a speedy trial in R.C. 2945.71(C)(2).
 {¶ 17} The record discloses that defendant, either through counsel or pro se, filed 20 motions during the 28 months prior to trial. Requests for discovery and motions for bills of particulars are tolling events pursuant to R.C. 2945.72(E). State v. Brown, 98 Ohio St.3d 121,2002-Ohio-7040. Appellant sought and was granted 15 continuances over that time period. Section (H) of the statute provides tolling for "the period of any continuance granted on the accused's own motion."
 {¶ 18} Additionally, there were serious concerns over appellant's competency to stand trial in this case. The initial psychiatric evaluation ordered by the trial court determined that appellant was not competent to stand trial. Appellant was referred for treatment until restored to competency. While the record shows a finding that appellant was returned to competency, the court found a need to order three subsequent referrals to the court psychiatric clinic based on appellant's behavior. These referrals were necessitated in part by appellant's continued refusal to cooperate with, and in some cases refusal to even communicate with, his assigned *Page 7 
defense counsel. Appellant also requested and was granted an independent psychological evaluation. Section (B) of the statute provides tolling during any period in which "the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined."
 {¶ 19} After allowing for the time delays resulting from appellant's motions, requested continuances and psychological evaluations, appellant was brought to trial within the statutorily mandated time requirement of R.C. 2945.71. Appellant's first assignment of error is overruled.
 {¶ 20} Appellant also argues that the delay in bringing him to trial violated his constitutional rights. In Barker v. Wingo (1972),407 U.S. 514, the United States Supreme Court identified four factors to be assessed in determining whether an accused was constitutionally denied a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. See State v. Hull, 110 Ohio St.3d 183,187-188, 2006-Ohio-4252. The Court stated that the correct approach is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. Barker, supra, at 530.
 {¶ 21} In this case, the conduct of the prosecution is not an issue. Most of the delays were a direct result of appellant's behavior and the trial court's concern for appellant's psychiatric health and his ability to properly understand and protect his rights. *Page 8 
 {¶ 22} In January 2005, the trial court, without objection from appellant, referred appellant to the court psychiatric clinic for a competency and sanity evaluation. Appellant was found to be incompetent to stand trial and was referred for treatment. In July 2005, appellant was returned to competency and referred for a sanity evaluation only. The transcript of the pretrial hearing shows that the court noted appellant's objections to further evaluations, but was concerned over appellant's mental capacity and his ability to protect his own constitutional rights.
 {¶ 23} In October 2005, appellant would not stipulate to the findings of the court psychiatric clinic and requested an independent competency evaluation. The court granted the request, leading to further delay.
 {¶ 24} In February 2006, appellant was again referred to the court psychiatric clinic after another outburst in court during a January hearing and after it was noted by the trial court that appellant continued to refuse to communicate or cooperate with defense counsel. At this point in the case, appellant had been assigned three different attorneys, refusing to work with any of them. In June 2006, appellant was again referred by the trial court to the court psychiatric clinic.
 {¶ 25} On the facts of this case, the delays in question were caused by appellant's own actions and the court's concerns in protecting appellant's rights and therefore do not represent an unreasonable infringement of appellant's constitutional rights. Appellant's second assignment of error is overruled.
 Assignment of Error III *Page 9 {¶ 26} In his third assignment of error, appellant asserts that the court erred by failing to make sufficient inquiry to determine whether appellant fully understood and intentionally waived his right to counsel.
 {¶ 27} Throughout the proceeding, appellant vehemently asserted that he had the right to represent himself and that he did not want to be represented by appointed counsel. The Ohio Supreme Court addressed this issue and concluded that "a defendant in a state criminal trial has an independent constitutional right of self-representation and * * * may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." State v. Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus.
 {¶ 28} The court based this conclusion upon the United States Supreme Court decision in Faretta v. California (1975), 422 U.S. 806, in which that court stated: "Although not stated in the Amendment in so many words, the right to self-representation — to make one's own defense personally — is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." Id. at 819-820.
 {¶ 29} In State v. Martin, 103 Ohio St.3d 385, 2004-Ohio-5471, the Ohio Supreme Court held that "[i]n the case of a `serious offense' as defined by Crim.R. 2(C), when a criminal defendant elects to proceed pro se, the trial court must demonstrate substantial compliance with Crim.R. 44(A) by making a sufficient inquiry *Page 10 
to determine whether the defendant fully understood and intelligently relinquished his or her right to counsel." Id. at paragraph two of the syllabus. Although the rule requires a written waiver for "serious offenses," such that which appellant was charged, if substantial compliance is demonstrated, then the failure to file a written waiver is harmless error. Id. at 392.
 {¶ 30} Although appellant did not file a written waiver of counsel, the record reflects that he insisted upon self-representation, even over the objections of appointed counsel and the trial court, continually from the beginning of the case until his request was finally granted.
 {¶ 31} The docket shows that in October 2004, appellant began filing pro se motions, although represented by court-appointed counsel. In August 2005, appellant's first attorney was permitted to withdraw at appellant's request and new counsel was appointed through the public defender's office. Appellant continued to file pro se motions. In October 2005, appellant's second attorney filed a motion to withdraw as counsel citing appellant's insistence on representing himself and his open hostility and refusal to communicate. In court, appellant stated, "I object to this woman being made reference to as my attorney." The court denied the motion to withdraw.
 {¶ 32} In January 2006, appellant, through counsel, filed a written motion to proceed pro se. The motion stated that appellant "has unequivocally declared that he chooses not to assist counsel and wishes to proceed without the benefit of *Page 11 
counsel." The motion referred back to October 2005 and counsel's motion to withdraw made after appellant insisted on representing himself.
 {¶ 33} In January 2006, the trial court assigned a third attorney to represent appellant. On January 31, 2006, during a pretrial hearing, appellant insisted upon his right to self-representation, stating, "I have a legal right to that." He stressed that for 20 years he had engaged in extensive paralegal research and study. He stated that he was not going to sit quietly during the trial while an attorney represented him. He asked the court to "conduct a voir dire in accordance to law to see if I'm able to properly understand the proceedings and to be able to represent myself."
 {¶ 34} In July 2006, appellant again asserted his right to represent himself in court. The trial court finally granted his request and appointed another attorney, the fourth in this case, as standby counsel to assist him. Appellant continued to file motions, pro se, in August and September 2006. In September 2006, appellant, representing himself, presented oral argument in support of his motions for dismissal. The transcript shows that appellant understood the nature of the charge filed against him and identified the elements of the offense. He made reference to the Revised Code and to case law in support of his motions.
 {¶ 35} On October 16, 2006, prior to trial, the court again inquired as to appellant's proceeding pro se. The court identified the defenses available and stressed the perils of going forward without attorney representation. It stated the possible penalties, and the range of prison terms for the offense charged. The court *Page 12 
advised appellant that if convicted, a prison term was mandatory due to the notice of prior convictions filed. The court discussed with appellant and his assisting counsel the option of bifurcating the prior conviction issue rather than presenting it to the jury. The judge insisted they take time to consider the issue before giving him a decision. Appellant's assisting counsel also advised the court that appellant had discussed the issue of the alleged victim in the case being an assistant county prosecutor, and decided he did not want to file a motion to have the prosecutor's office withdraw from the case.
 {¶ 36} We find that appellant voluntarily, knowingly and intelligently elected to defend himself. The trial court went to extraordinary measures to insure that appellant's constitutional rights were protected. After being offered, and refusing, legal representation by three different court-appointed attorneys, appellant elected to represent himself with the assistance of another court-appointed attorney. Appellant's third assignment of error lacks merit and is overruled.
 Assignment of Error IV {¶ 37} In his fourth assignment of error, appellant asserts that he was denied effective assistance of counsel before, during and after trial.
 {¶ 38} Appellant argues that he did not waive his right to be represented by counsel at trial and that his court appointed "standby counsel" failed to provide him effective assistance. *Page 13 
 {¶ 39} In Martin, the court stated: "Today we reaffirm and hold that in Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." State v. Martin, supra, at 390.
 {¶ 40} Appellant waived his right to counsel and therefore waived any right to claim ineffective assistance of counsel.
 {¶ 41} In Faretta v. California, the court addressed the duties of an assisting or "standby counsel" as being "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." Faretta, 422 U.S. at 834.
 {¶ 42} The record adequately reflects that standby counsel aided appellant when asked. Counsel issued subpoenas at appellant's request. Counsel provided guidance when asked on issues relating to the victim's employment with the county prosecutor's office and on trial bifurcation. There is nothing in the record to indicate that counsel refused to provide assistance when asked or that appellant sought to terminate his self-representation.
 {¶ 43} Appellant's fourth assignment of error is overruled.
 Assignment of Error V *Page 14 {¶ 44} In his fifth assignment of error, appellant argues that his conviction for robbery was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 45} An appellate court reviewing whether there was sufficient evidence to support the conviction, views the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St. 3d 259, paragraph two of the syllabus.
 {¶ 46} In determining whether a conviction is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 47} Appellant was convicted of one count of robbery under R.C.2911.02 which provides:
 {¶ 48} " (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control; (2) *Page 15 
Inflict, attempt to inflict, or threaten to inflict physical harm on another; (3) Use or threaten the immediate use of force against another."
 {¶ 49} Appellant argues that by the time the struggle with police occurred, he was not "fleeing immediately" after the theft of the purse. He claims there was a sufficient lapse in time between the theft and the attempt to flee and therefore there was no robbery offense. We disagree.
 {¶ 50} Appellant's reliance on State v. Thomas (2005),106 Ohio St.3d 133, is misplaced. In Thomas, the defendant had left the store where the theft occurred, walked into another store, was apprehended peacefully in the second store and was returning to the original store without incident when he suddenly attempted to flee, inflicting injury to the officer.
 {¶ 51} In the instant case, the state presented evidence from the victim, a mall employee, and two police officers. The victim testified that she felt something brush her arm and looked up and saw appellant hurrying away with her purse. The mall employee testified that he saw appellant fleeing through the food court with the victim's purse. One police officer testified that he saw appellant throw the purse away and immediately hurry over to the escalator. Both officers testified that appellant tried to push through the officers waiting at the top of the escalator to apprehend him, and struck one of the officers in the chest.
 {¶ 52} The state presented evidence supporting all of the elements of the robbery offense. There is no indication that the jury lost its way in resolving any *Page 16 
conflicts in the evidence. We therefore find there was sufficient evidence to support the robbery conviction and that the conviction was not against the manifest weight of the evidence. Appellant's fifth assignment of error is overruled.
 Assignment of Error VI {¶ 53} In his sixth and final assignment of error, appellant asserts that the trial court committed reversible error by failing to notify him of the terms of postrelease control during sentencing and as a result, his sentence must be vacated and a new sentencing hearing held. This argument has merit.[1]
 {¶ 54} The journalized sentencing entry states: "POST RELEASE CONTROL IS PART OF THIS PRISON SENTENCE FOR THREE YEARS FOR THE ABOVE FELONY(S) UNDER R.C. 2967.28." However, the transcript of the sentencing hearing shows the court only advised appellant that he would be placed on postrelease control upon release. The trial court failed to advise appellant at sentencing that the sentence included a mandatory term of three years postrelease control.
 {¶ 55} In State v. Jordan, 104 Ohio St. 3d 21, 2004-Ohio-6085, the Ohio Supreme Court held: "When a trial court fails to notify an offender about postrelease control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. *Page 17 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." More recently, in State v. Bezak, 114 Ohio St.3d 94, 2007-Ohio-3250, the supreme court held: "When a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void. The offender is entitled to a new sentencing hearing for that particular offense." Id. at syllabus.
 {¶ 56} Therefore, pursuant to the Ohio Supreme Court holdings inJordan and Bezak, the notice of postrelease control given at the sentencing hearing was insufficient to advise appellant of the mandatory nature and exact term of postrelease control, and, even though the correct terms were included in the journal entry, we must vacate the sentence and remand the matter to the trial court for a de novo sentencing hearing.
 {¶ 57} Appellant's conviction is affirmed, but the sentence is vacated and the matter is remanded for a new sentencing hearing with instructions to advise appellant of all of the statutorily mandated terms of his sentence at that hearing.
 {¶ 58} Costs to be divided equally between plaintiff-appellee and defendant-appellant.
 {¶ 59} The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. *Page 18 
The defendant's conviction having been affirmed, any bail pending appeal is terminated. Sentence vacated and case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and COLLEEN CONWAY COONEY, J., CONCUR
[1] The prosecutor conceded this issue at oral argument. *Page 1